IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

FILED
U.S. DIST. COURT
BRUNSWICK DIV.

2005 OCT 28  P 2: 22

CLERK
S_____ T. OF GA.

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | CASE NO.: CR205-32 |
| v. ) | |
| ) | |
| KALVIN LASHAWN MANGRAM ) | |
| DENNIS MITCHELL ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Dennis Mitchell ("Mitchell") is charged with violating: 18 U.S.C.A. § 922(g)(1), possession of firearms and ammunition by a convicted felon; 18 U.S.C.A. § 924(e), being an armed career criminal; and 18 U.S.C.A. § 922(k), possession of a firearm with an obliterated serial number. Mitchell filed a Motion to Suppress, and the Government responded. The undersigned conducted an evidentiary hearing on October 25, 2005, at which Officer Roderick Nohilly of the City of Brunswick Police Department testified. The Government offered into evidence the videotape of the traffic stop and ensuing search. The parties filed post-hearing briefs.

## FINDINGS OF FACT

The credible testimony at the evidentiary hearing and a review of the videotape established the following:

Just after midnight on April 14, 2005, Officer Roderick Nohilly ("Nohilly") was on patrol. Nohilly was traveling east on L Street to assist another officer on Amherst Street. As he was driving, he noticed a blue 1991 Oldsmobile Cutlass turn left from L Street onto

AO 72A
(Rev. 8/82)

Amherst which failed to yield the right of way to a minivan; the person driving the minivan had to slam on the brakes to avoid a collision. Nohilly initiated a traffic stop of the Oldsmobile by activating his blue lights. After stopping the vehicle, Nohilly approached the vehicle on the driver's side and asked the driver for his license. Nohilly noticed that there was beer in the car, including an open container in the possession of the passenger. Nohilly asked the driver, Mitchell, to give him the beers, and he did so. Nohilly placed the beers on top of the car. Nohilly explained to Mitchell and his passenger that it was against the law to have an open container of alcohol in a vehicle. Nohilly testified that he could arrest a person who possessed an open container under Georgia law. Mitchell stated that he had not been drinking. Mitchell also stated that the vehicle belonged to a friend of his. Nohilly asked the passenger if he had any identification, and the passenger said he did not.

Nohilly returned to his patrol car for several moments, presumably to run Mitchell's license and the license plate found on the car. Nohilly approached the car again[1], and he and Mitchell went to the back of the vehicle. Nohilly explained the traffic citation to Mitchell, had Mitchell sign the citation, and handed the citation to Mitchell. Nohilly then approached the passenger's side of the vehicle to speak with Kalvin Mangram, Mitchell's passenger and co-defendant. Mangram did not have any identification with him[2] but told Nohilly that

---

[1] Based on a review of the videotape, an officer who appeared to be Nohilly approached the car a second time, but Nohilly's audio device was not operational at that time.

[2] During the time Nohilly's audio device was not operational and he approached the vehicle a second time (note 1), it appears that he asked Mangram about his date of birth. This seems to be the case given the events which followed when Nohilly's audio device was operational once Nohilly approached the car the third time. After Nohilly asked Mangram for his name and date of birth, Mangram informed him that his birthdate was September 4, 1976. Nohilly asked Mangram, "You wouldn't be lying to me, would you?" The videotape indicates that Nohilly had asked the dispatcher for this information previously while he was in his patrol car, which was audible from the microphone in Nohilly's car. The dispatcher informed Nohilly that Mangram's date of birth was September 14, 1976.

2

his date of birth was September 4, 1976; however, the dispatch operator again informed Nohilly that Kalvin Mangram's date of birth was September 14, 1976. Nohilly asked Mangram about the discrepancy between these dates, and Mangram insisted that his date of birth was September 4, 1976. Mangram also informed Nohilly that he had been on probation before but was not at that time. Nohilly verified Mangram's information with the dispatcher again who informed Nohilly that Mangram's date of birth was September 14, 1976, and that he was currently on probation based on the commission of a felony offense. Nohilly placed handcuffs on Mangram, put him in the back of another officer's patrol car, and informed Mangram that he was under "investigative detention" while the date of birth discrepancy was clarified. Nohilly spoke with someone with the Glynn Detention Center who informed Nohilly that September 4, 1976, was the date of birth on file for a Kalvin Mangram. However, the physical description associated with this person did not match Mangram's physical characteristics. Nohilly testified that the dispatcher would have had Mangram's information from the National Crime Information Center and the Georgia Crime Information Center ("NCIC" and "GCIC"), which was what he (Nohilly) would have to rely upon at that time. At the end of his testimony, Nohilly stated that Mangram was under arrest for providing false information to a police officer.

Nohilly again approached Mitchell and asked if he could take a look in the car "real quick." Mitchell informed him that the car was not his. Nohilly testified that he knew he could search the vehicle, even in the absence of Mitchell's consent, and asked for Mitchell's consent to gauge his reaction to the request. Nohilly and Officer Wilson proceeded to search the vehicle. A bullet and gun pellets were found under a piece of paper in the car, and Nohilly asked Mitchell if he were a convicted felon. Mitchell stated

3

that he had been in trouble before but did not directly answer Nohilly's question. Nohilly then informed Mitchell that he was under investigative detention until the officers could determine why there was ammunition in the vehicle. Officers continued searching the vehicle. A firearm was found under Mangram's seat, another firearm was found under the middle portion of the front seat, and a camouflage hunting mask was found under the driver's seat. Nohilly testified that Mangram was wearing a hunting mask.

## ISSUES PRESENTED

Mitchell asserts that the search of the vehicle was not incident to an arrest because officers had not placed Mangram under arrest. Mitchell also asserts that the search exceeded the scope of the initial stop. Mitchell contends that all evidence recovered as a result of the illegal search should be suppressed.

The Government alleges that the search of the vehicle Mitchell was driving was incident to the lawful arrest of Mangram, Mitchell's passenger. The Government also alleges that, even if this Court determines that Mangram was not under arrest, the search of the car was proper under Michigan v. Long, 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed.2d 1201 (1983), as Mangram was under investigative detention.

## DISCUSSION AND CITATION TO AUTHORITY

There are three types of police-citizen encounters "which invoke the [F]ourth [A]mendment: police-citizen communications involving no coercion or detention; brief seizures or investigative detentions; and full-scale arrests." United States v. Hastamorir, 881 F.2d 1551, 1556 (11th Cir. 1989). Investigative detentions involve "reasonably brief encounters in which a reasonable person would have believed that he or she was not free

4

to leave." Id. (citing Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed.2d 889 (1968)). "In order to justify a fourth amendment seizure, the government must show a reasonable and articulable suspicion that the person has committed or is about to commit a crime. . . . [I]f the totality of circumstances indicates that an encounter has become too intrusive to be classified as an investigative detention, the encounter is a full-scale arrest, and the government must establish that the arrest is supported by probable cause." Id. "[A]n arrest [supported by probable cause] must be objectively reasonable based on the totality of the circumstances." United States v. Dunn, 345 F.3d 1285, 1290 (11th Cir. 2003). The probable cause standard "is met when the facts and circumstances within the officer's knowledge, of which he . . . has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Id. (internal citation and punctuation omitted). Probable cause "requires more than suspicion," but "does not require convincing proof, and need not reach the same standard of conclusiveness and probability as the facts necessary to support a conviction." Id.

"A warrantless search is *per se* unreasonable under the Fourth Amendment unless it falls within one of several specifically established and well-delineated exceptions." Holmes v. Kucynda, 321 F.3d 1069, 1082 (11th Cir. 2003) (citing Mincey v. Arizona, 437 U.S. 385, 390, 98 S. Ct. 2408, 2412, 57 L. Ed.2d 290 (1978)). "A search incident to [an] arrest is one of these exceptions." Id. A search incident to an arrest requires no additional justification, "[s]ince it is the fact of custodial arrest which gives rise to the authority to search." United States v. Robinson, 414 U.S. 218, 235, 94 S. Ct. 467, 477, 38 L. Ed.2d 427 (1973). "[W]hen a policeman has made a lawful custodial arrest of the occupant of an

5

AO 72A
(Rev. 8/82)

automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile" and "may also examine the contents of any containers found within the passenger compartment[.]" New York v. Belton, 453 U.S. 454, 460, 101 S. Ct. 2860, 2864, 69 L. E.2d 768 (1981); Thornton v. United States, 541 U.S. 615, ___, 124 S. Ct. 2127, 2130-31, 158 L. Ed.2d 905 (2004).

In the case *sub judice*, Nohilly stopped[3] the car Mitchell was driving due to his failure to yield the right of way to oncoming traffic. Once he approached the car, Nohilly noticed an open container of beer in the possession of Mangram, the passenger. Nohilly testified that he could have arrested Mangram for having possession of an open container.[4] While Nohilly testified that he did not intend to pursue the open container issue with Mitchell, there is no evidence before the undersigned that Nohilly did or did not have the intention of pursuing this offense further with Mangram. In addition, when Nohilly first approached the car, he asked Mangram whether he had any identification; Mangram said he did not. As discussed in note 2 of this Report, it appears that Nohilly asked Mangram for his date of birth on an occasion prior to approaching the passenger's side of the car. Having already observed Mangram in possession of an open container of beer, Nohilly was permitted to prolong the traffic stop. See United States v. Boyce, 351 F.3d 1102, 1107

---

[3] Mitchell does not contest the traffic stop, nor does it appear that Mitchell avers that the stop lasted an impermissible amount of time. Thus, the undersigned has focused his analysis on the search of the car.

[4] "A person shall not: (A) Consume any alcoholic beverage; or (B) Possess any open alcoholic beverage container in the passenger area of any motor vehicle which is on the roadway or shoulder of any public highway." O.C.G.A. § 40-6-253(b)(1). A violator of this Code section is subject to a fine not to exceed $200.00. O.C.G.A. § 40-6-253(c). It is unclear whether an offender of the open container law would be subject to arrest for violating this statute since the only prescribed punishment is the payment of a fine. However, whether an offender of the open container law would be subject to arrest is irrelevant, as Mangram's possession of an open container was a separate and distinct traffic violation.

AO 72A
(Rev. 8/82)

(11th Cir. 2003) (noting that once a traffic stop has been completed, the officer should allow the driver to go unless the officer had a reasonable and articulable suspicion of some other criminal wrong doing).[5] It was during the time Nohilly spoke with Mangram on the passenger's side of the vehicle that he attempted to confirm Mangram's birth date through the dispatcher and then the Glynn County Detention Center. Nohilly testified that he was supposed to follow what the dispatcher told him because her information would have been from the NCIC/GCIC records. Because there was still a discrepancy between what Mangram insisted was his date of birth and what the dispatcher told Nohilly Mangram's date of birth was, it was not improper for Nohilly to put Mangram in handcuffs and place him in another officer's patrol car. Pursuant to O.C.G.A. § 16-10-25, "A person who gives a false name, address, or date of birth to a law enforcement officer in the lawful discharge of his official duties with the intent of misleading the officer as to his identity or birth date is guilty of a misdemeanor." Although Nohilly informed Mangram that he was being placed under "investigative detention", this detention actually appears to be an arrest, as Mangram was handcuffed and placed in the back of a patrol car; Mangram's arrest was supported by probable cause. See Hastamorir, 881 F.2d at 1556; Dunn, 345 F.3d at 1290.

It is irrelevant that Mangram was not ultimately charged with a violation of section 16-10-25 once Nohilly took him to the Glynn County Detention Center. Though, as

---

[5] Mitchell has cited Boyce to support his contention that only when he did not consent to the search of the vehicle did the investigative detention ripen to an arrest. (Doc. No. 62, p. 9.) The Boyce court reasoned that an officer cannot base his decision to prolong a traffic stop on the "detainee's refusal to consent to a search. Such a refusal may only be considered when the police have already observed, before asking for permission to search, facts sufficient to raise a reasonable suspicion." Boyce, 351 F.3d at 1110. As discussed in the body of this Report, Nohilly observed facts sufficient to raise a reasonable suspicion of illegal activity on the part of Mangram. Boyce is distinguishable from the instant case. Mitchell's failure to consent to the search of the vehicle is a non-issue.

AO 72A
(Rev. 8/82)

Defendant notes, there is no evidence before the undersigned that Mangram intended to mislead Nohilly as to his date of birth, it was Nohilly's belief *at the time* of this incident that is relevant to the undersigned's analysis. Notably, when the undersigned asked Nohilly at the evidentiary hearing for what offense or offenses had Mangram been arrested, Nohilly replied that Mangram was arrested for giving false information. Officers were permitted to conduct a search of the vehicle in which Mangram was a passenger as incident to Mangram's lawful arrest. See Belton, 453 U.S. at 460, 101 S. Ct. at 2864.; Thornton, 541 U.S. at ___, 124 S. Ct. at 2130-31.

Mitchell cites to Knowles v. Iowa, 525 U.S. 113, 119 S. Ct. 484, 142 L. Ed.2d 492 (1998), and United States v. Pruitt, 174 F.3d 1215 (11th Cir. 1999), in support of his contention that Officer Nohilly's actions were violative of Mitchell's Fourth Amendment rights. In Knowles, the Supreme Court determined that the search of defendant's vehicle was unconstitutional. The Supreme Court stated that "[o]nce Knowles was stopped for speeding and issued a citation, all the evidence necessary to prosecute that offense had been obtained. No further evidence of excessive speed was going to be found either on the person of the offender or in the passenger compartment of the car." Knowles, 525 U.S. at 118, 119 S. Ct. at 488. While it is clear that the traffic stop in the instant case concluded when Nohilly gave Mitchell the citation for failure to yield, Nohilly's continuing detention of Mitchell and Mangram had not, as noted above. Nohilly noticed that Mangram had possession of an open container of beer, and Nohilly had evidence before him that there was a discrepancy between what Mangram told him his date of birth was and what the dispatcher told him. Nohilly's questioning of Mangram and resulting detention of him were related to information Mangram had provided him and unrelated to the initial stop.

AO 72A
(Rev. 8/82)

Knowles is factually distinguishable from the instant case and does not lend support to Mitchell's assertions.

Likewise, Pruitt does not support Mitchell's contention that the search at issue violated his constitutional rights. The Eleventh Circuit reasoned that "once an officer has briefly stopped a motor vehicle operator for the purpose of issuing a traffic violation, . . . the officer's continuing detention of the vehicle's occupants is authorized under the Fourth Amendment only if the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." Pruitt, 174 F.3d at 1219 (internal citation and punctuation omitted). Unlike the officer involved in the Pruitt case, Nohilly had specific and articulable facts (i.e., Mangram had possession of an open container of beer, and, at the time of the incident, Nohilly had reason to believe Mangram provided him with false information concerning his date of birth) which permitted his continuing detention of Mitchell and his passenger, Mangram.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Mitchell's Motion to Suppress (Doc. No. 43) be **DENIED**.

So **REPORTED** and **RECOMMENDED**, this 28th day of October, 2005.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)